UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>ROBERT DANIEL GOULD, JR. and BRENDA JEAN GOULD,<br><br>　　　　　　Debtors.<br>―――――――――――――――――<br>KATHLEEN McCALLISTER, Trustee,<br><br>　　　　　　Appellant,<br><br>　v.<br><br>ROBERT DANIEL GOULD, Jr. and BRENDA JEAN GOULD,<br><br>　　　　　　Appellees. | Case No. 4:20-cv-00472-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Chapter 13 bankruptcy trustee appeals from the bankruptcy court's order granting the second application for compensation filed by the Goulds' counsel, Mr. Paul Ross, pursuant to which the court approved $7,188.20 in Mr. Ross's attorney's fees and costs as administrative expenses. *Order Granting Additional Compensation*, Bkr. Dkt. 179.[1] The bankruptcy court directed the

---

[1] Throughout this decision, citations to "Bkr. Dkt." refer to the docket in the underlying bankruptcy case, *In re Gould*, Case No. 19-40182-JMM (Bankr. D. Idaho).

MEMORANDUM DECISION & ORDER - 1

trustee to pay the fees and costs under the Goulds' confirmed plan. *Id.* For the reasons stated below, the Court reverses the bankruptcy court's decision, vacates its order, and remands this case for further proceedings consistent with this order.

## BACKGROUND

**1. The Goulds' Confirmed Chapter 13 Bankruptcy Plan**

Robert and Brenda Gould filed a Chapter 13 bankruptcy petition on March 5, 2019. Paul Ross is their attorney and filed the petition on their behalf. *See Voluntary Petition*, Bkr. Dkt. 1.

A Chapter 13 plan must satisfy the "best interests of creditors" test, which requires that unsecured creditors holding allowed claims must receive at least as much from the plan as they would receive if the debtor's assets were liquidated under Chapter 7 on the plan's effective date. 11 USC § 1325(a)(4). The effective date of a chapter 13 plan is the date the bankruptcy court confirms the plan unless a different effective date is stated in the plan. *In re Hoopai*, 581 F.3d 1090, 1100-01 (9th Cir. 2009).

On February 26, 2020, the bankruptcy court considered the § 1325(a)(4) best interests of creditors test and determined that, had the bankruptcy estate been liquidated under chapter 7, the general (non-administrative) unsecured creditors would receive approximately $8,300 in plan disbursements. *Feb. 26, 2020 Oral Ruling Tr.* at 11, Bkr. Dkt. 151. Therefore, because these creditors' claims totaled

$162,816.92, *Appellant's Br.* at 8 n.4, Dkt. 6, each of them would receive approximately 5.1 percent of their individual claims on a pro rata basis, assuming a hypothetical chapter 7 liquidation.

Having determined an initial $8,300 best interests of creditors threshold, the bankruptcy court considered and confirmed the Goulds' third amended plan on April 6, 2020. *See Order Confirming Plan*, Bkr. Dkt. 155. The plan provided for the following debtor payments and plan disbursements, which – relevant to this case – capped the fees and costs payable to debtor's counsel at $7,379.40:

| | |
|---|---|
| Aggregate plan payments ($450/month for 60 months) | $27,000 |
| Additional payments (garnishment funds and tax refunds) | $548.78 |
| **Total projected plan base** | **$27,548.78** |
| Trustee's fees (10% of plan base) | ($2,758.48) |
| Amount available for disbursement to creditors | $24,790.30 |
| Amount projected to be paid to Ace Financial, including interest | ($3,215.96) |
| Amount to be paid to debtor's counsel (of which $6,579.40 was approved in the court order) | ($7,379.40)[2] |
| Amount to be paid on priority tax claim | ($121.00) |
| **Projected balance available for disbursement to general unsecured creditors** | **$14,073.94 (approximately 8.6 percent of each unsecured creditor's claim, on a pro rata basis)** |

---

[2] The parties' briefs list the amount to be paid to debtor's counsel as $7,000, as stated in the third amended plan. *See Third Amended Ch. 13 Plan* at § 4.3, Bkr. Dkt. 138. However, the bankruptcy court increased Mr. Ross's allowable fees to $7,379.40 in its order granting the plan. *See Order Confirming Ch. 13 Plan*, Bkr. Dkt. 155 (modifying *Third Amended Ch. 13 Plan*, stating "Debtor's attorney's fees and costs shall be allowed in the amount of $7,379.40").

*Third Amended Ch. 13 Plan* at 1-4, Bkr. Dkt. 138.

### 2. Post-Confirmation Application for Compensation of Trustee's Special Counsel

After the bankruptcy court confirmed the plan, the trustee's special counsel filed an adversary proceeding against a third party, Ms. Lois Rieke, to avoid a lien that Ms. Gould had granted to Ms. Rieke before filing the bankruptcy petition. Ms. Reike stipulated to the avoidance of the lien, and in a May 19, 2020 order, the bankruptcy court awarded the trustee's special counsel $3,262.50 in compensation to be paid in full as an administrative claim from the plan. *Order Granting Special Counsel's Application for Compensation,* Bkr. Dkt. 166; *see also Order Confirming Ch. 13 Plan*, Bkr. Dkt. 155. This reduced the plan's balance available for disbursement to general unsecured creditors from $14,073.94 to $10,811.44, thus limiting these creditors' disbursements to approximately 6.6 percent on a pro rata basis, reduced from 8.6 percent under the previously approved plan. Also, because special counsel's fees would be paid in full as an administrative claim, the $3,262.50 fees amount would reduce the $8,300 best interests of creditors threshold to $5,037.50, *see Appellant's Br.* at 21, Dkt. 6, thus requiring that the general unsecured creditors receive at least approximately 3.1 percent of their individual claims under a revised hypothetical chapter 7 liquidation. The revised

plan balance, entitling these creditors to approximately 6.6 percent, more than satisfied this requirement.

### 3. Mr. Ross's Post-Confirmation Application for Compensation

Despite the plan's $7,379.40 cap on payments to Mr. Ross, the bankruptcy court granted his second application for compensation on August 19, 2020, approving an additional $7,188.20 in attorney's fees and costs, *Order Granting Additional Compensation*, Bkr. Dkt. 179. These fees and costs were supplemental to the $6,579.40 it had already approved for Mr. Ross's fees and costs as part of the plan. Thus, after approving Mr. Ross's second application, the court had approved compensation payments to Mr. Ross totaling $13,767.60, exceeding the plan's $7,379.40 fees cap by $6,388.20.

The trustee objected to Mr. Ross's second compensation application on the basis that a post-confirmation award to him of $7,188.20 would reduce the plan's balance available for disbursement to the general unsecured creditors below the $5,037.50 best interests of creditors threshold. According to the trustee's argument, the maximum the bankruptcy court could grant Mr. Ross pursuant to his second application was $6,573.90, given that the confirmed plan projected $7,379.40 in total payments to Mr. Ross—of which $6,579.40 had previously been approved for payment to him under the plan, leaving $800.00 still available to pay him—and the $3,262.50 compensation payment the court had approved post-confirmation to

trustee's counsel. In sum, approving the full $7,188.20 payment to Mr. Ross would reduce the plan's balance available for disbursement to general unsecured creditors by $614.30 below the $5,037.50 minimum, to $4,423.20. As such, these creditors would receive 2.7 percent of their individual claims, which is .4 percentage points below the § 1325(a)(4) threshold.

In response to the trustee's objection, Mr. Ross noted that the bankruptcy court had approved the initial $6,579.40 in fees and costs he sought when the plan was confirmed under §§ 330(a)(4)(b), 503(a), 507(a)(2), and 1326(b)(1) as priority administrative expenses. Relying on the general principle that "[d]ebtor's attorneys fees are an administrative claim on the effective date of the plan," *Appellee's Br.* at 10, Dkt. 7 (citing *In re Roberts*, 8 B.R. 155, 156 (Bankr. S.D.N.Y. 1981); *In re Hieb*, 88 B.R. 1019, 1021 (Bankr. D.S.D. 1988)), Mr. Ross argued in connection with his second application for compensation that "[a]dding another administrative claim does not modify the plan or further reduce the payment to unsecured creditors under the best interests of creditors test." *Appellee's Br.* at 8, Dkt. 7. Thus, according Mr. Ross, his second application proposed no modification to the plan, and no new chapter 7 liquidation analysis was needed for the court to grant the application. *See id.* Therefore, he argued, the court should grant the entire $7,188.20 he requested in the application.

The bankruptcy court agreed with Mr. Ross's arguments, opining that his second application proposed no plan modification. *Aug. 4, 2020 Oral Ruling Tr.* at 35-38, Bkr. Dkt. 207. As such, the court explained, the best interests of creditors test was not invoked. *Id.* at 38 (stating that, "if there's no modification under 1329(b)(1), then no 1325(a)(4) analysis is required"). Nevertheless, the court went on to find that—even if Mr. Ross's application proposed a modification—granting his request for $7,188.20 did not cause the plan to violate the best interests of creditors test. *Id.* at 39-40.

On August 19, 2020, the bankruptcy court entered an order granting Mr. Ross's second application, approving $7,188.20 in Mr. Ross's attorney's fees and costs as administrative expenses payable under the Goulds' confirmed plan. *Order Granting Additional Compensation*, Bkr. Dkt. 179. The trustee timely appealed.

## LEGAL STANDARD

"The bankruptcy court's interpretation of the bankruptcy code is reviewed de novo." *In re Been*, 153 F.3d 1034, 1036 (9th Cir. 1998). Therefore, this Court considers de novo the bankruptcy court's determination that Mr. Ross's second application did not propose a modification of the plan.

In addition, a bankruptcy court's ruling on whether to permit a modification of a confirmed chapter 13 plan is reviewed for abuse of discretion. *Towers v. United States (In re Pac.-Atlantic Trading Co.)*, 64 F.3d 1292, 1297 (9th Cir.

1995); *In re Mattson*, 468 B.R. 361, 366-67 (B.A.P. 9th Cir. 2012). A bankruptcy court abuses its discretion if it "applies the wrong legal standard, or its finding are illogical, implausible, or without support in the record." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.2d 820, 832 (9th Cir. 2011).

Finally, a bankruptcy court's factual findings, such as the liquidation value of a debtor's estate under the best interests of creditors test, are reviewed under the clearly erroneous standard. Like the abuse of discretion standard, a bankruptcy court's factual findings are clearly erroneous if they "are illogical, implausible, or without support in the record." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## ANALYSIS

1. **Plan Confirmation**

A Chapter 13 plan must satisfy the "best interests of creditors" test, which requires that all unsecured creditors holding allowed claims must receive at least as much under the plan as they would receive if the debtor's assets were liquidated under Chapter 7 on the plan's effective date. § 1325(a)(4); *In re Chavis*, 47 F3d 818, 824 (6th Cir. 1995); *Frazier v. Real Time Resolutions, Inc.*, 469 B.R. 889, 902) (Bankr. E.D. Cal. 2012).

Before confirming the Goulds' chapter 13 plan, the bankruptcy court determined that the general unsecured creditors would receive, in total, $8,300 in disbursements if the Goulds' assets were liquidated under Chapter 7 on the plan's

effective date, initially setting the § 1325(a)(4) threshold at that amount. Because these creditors' claims totaled $162,816.92, each of them would receive approximately 5.1 percent of their individual claims on a pro rata basis, assuming a hypothetical chapter 7 liquidation.

### 2. Reduced § 1325(a)(4) Threshold

After awarding trustee's special counsel fees of $3,262.50 following the lien avoidance proceeding, the bankruptcy court properly reduced the § 1325(a)(4) threshold to $5,037.50 given that the confirmed plan stated that "all *allowed priority claims . . . will be paid in full.*" Third Amended Ch. 13 Plan § 4.1, Bkr. Dkt. 138 (emphasis added). Similarly, the bankruptcy court's order awarding trustee's special counsel's fees stated they "shall be paid as an *administrative priority claim* pursuant to the terms of the plan and the order of confirmation." *Order Approving Final Compensation for Counsel for Trustee*, Bkr. Dkt. 166 (emphasis added); *see also Order Confirming Ch. 13 Plan*, Bkr. Dkt. 155 (designating trustee's special counsel's fees as an "administrative claim").

Reducing the § 1325(a)(4) threshold to $5,037.50 following the fees award to trustee's special counsel also is consistent with case law addressing similar administrative priority claims in other Chapter 13 cases. *See, e.g., In re Hieb,* 88 B.R. at 1021; *Matter of Wilheim*, 29 B.R. 913, 914 (Bankr. D.N.J. 1983). This

threshold reduction reduced the amount the Goulds' general unsecured creditors would receive in a hypothetical chapter 7 liquidation to approximately 3.1 percent.

The $3,262.50 fee award to trustee's counsel reduced the plan's balance available for disbursement to general unsecured creditors from $14,073.94 to $10,811.44, thus limiting these creditors' disbursements on their individual claims from approximately 8.6 percent to 6.6 percent on a pro rata basis, more than satisfying the 3.1 percent § 1325(a)(4) threshold.

   3.  **Plan Modification**

In contrast to the bankruptcy court's award of trustee counsel's fees, which the court noted in section 4.1 of the plan would be "paid in full" and, therefore, did not modify the Goulds' plan, the court's award of $7,188.20 in post-confirmation attorney's fees and costs to Mr. Ross modified the plan because section 4.3 of the plan expressly caps Mr. Ross's fees and costs at $7,379.40 (of which the court already approved $6,579.40 for payment to him in its plan confirmation order), *Order Confirming Ch. 13 Plan*, Bkr. Dkt. 155, leaving a maximum of $800.00 still available to pay him for any subsequently approved fees or costs under the plan's terms.

More specifically, section 5.1 of the plan provides that allowed general unsecured creditors' claims "that are not separately classified will be paid, pro rata, from the funds remaining after disbursements have been made to all other creditors

*provided for in this plan* [emphasis added]." *See Third Amended Plan* at § 5.1, Bkr. Dkt. 138.

Therefore, the court's award of $7,188.20 to Mr. Ross was a plan modification because the award to Mr. Ross exceeded the remaining $800 amount provided to him under the plan's cap. As a result, the court could exercise its discretion to approve the modification proposed in Mr. Ross's second application only if it satisfied the best interests of creditors test. *See Barbosa v. Solomon,* 235 F.3d 31, 38 (1st Cir. 2000) (ruling that a modified chapter 13 plan must comply with best interests of creditors test)*; In re Scholl*, 605 B.R. 163, 179 (Bankr. S.D. Ohio 2019) (explaining that "[a]ny modification under § 1329 must satisfy the mandatory requirements of plan confirmation under § 1325(a).").

4. **Best Interests of Creditors Test under Modified Plan**

Unlike the court's award of fees to trustee's special counsel, which the bankruptcy court appropriately permitted as a reduction to the § 1325(a)(4) threshold, the court's award of $7,188.20 in fees and costs to Mr. Ross improperly caused the plan's projected balance available to pay general unsecured creditors to fall below the threshold.

The court in *In re Dewey*, 237 B.R. 783, 788-89 (B.A.P. 10th Cir. 1999) reached a similar conclusion. There, the court found that the best interests of creditors test was not satisfied, and therefore, the proposed Chapter 13 plan could

**MEMORANDUM DECISION & ORDER - 11**

not be confirmed, because the debtor's attorney failed to timely disclose his post-petition fees and expenses before the court's hearing on the chapter 7 liquidation analysis. *Id.* Under the proposed plan, general unsecured creditors would have received 8 percent of their claims, while in a hypothetical Chapter 7 case, these creditors would have been paid only 6 percent. *Id*. However, the fees and expenses the attorney requested after the hearing date would have left only a nominal sum below the 6 percent § 1325(a)(4) threshold for distribution to the general unsecured creditors. *Id.* at 789; *see also In re Goudreau*, 530 B.R. 783, 789-90 (Bank. D. Kan. 2015) (rejecting debtors' contention that their attorneys were priority unsecured creditors whom debtors were entitled to pay without violating best interests of creditors test because awarding the attorneys' fees and costs would cause the balance available for disbursement to unsecured creditors to fall below the § 1325(a)(4) threshold).

 In light of these authorities, the bankruptcy court in this case improperly modified the plan by awarding $7,188.20 to Mr. Ross, which reduced the balance available to pay general unsecured creditors to $4,423.20, or approximately 2.7 percent of their individual claims. A proper application of the best interests of creditors test required this available balance to cover at least approximately 3.1 percent of their claims.

## ORDER

**IT IS ORDERED that** the bankruptcy court's order granting Mr. Ross's second application for compensation is REVERSED. That order is VACATED and this case is REMANDED to the bankruptcy court for proceedings consistent with this decision.

DATED: September 28, 2021

B. Lynn Winmill
U.S. District Court Judge